Our next case is 21-1031 Loffer v. Looper. Mr. Bacon for the appellant, you may proceed. Good morning, your honors. May it please the court, my name is Tom Bacon. I'm the attorney for the plaintiff appellant, Ms. Loffer. This presents an issue as to whether or not a disabled person who reviews a hotel's online reservation service that fails to comply with the regulation, suffers actionable injury, or whether a court may or must impose the additional requirement that they intend to book a room at the hotel. The division between the courts turns on their interpretation of which Supreme Court opinion applies. Is it Havens Realty or is Spokio? Most of those decisions came out before the court in TransUnion clarified the issue that Spokio does not apply to discrimination cases. Spokio had talked about two different sorts of statutory injury. One is where Congress creates an injury by statute that appears as an injury but is not related to any sort of real injury that exists in the real world. In Spokio, it involved inaccurate information on a credit report in technical violation of the Fair Credit Reporting Act, but it was benign information. It didn't harm the plaintiff in any way, it just simply portrayed him in a different way. The Supreme Court likened that to an incorrect zip code on a credit report, but Spokio, by contrast, also discussed the other sorts of statute that Congress can create into a concrete de facto incognizable injury, and that is where it is related to a harm that existed in the real world, even if it wasn't previously actionable. It did not cite discrimination as the example. TransUnion did, and it cited Spokio for that point, and the one example that it gave was discriminatory treatment. If we went back to prior... Tell us the specific language you're referring to there, where you said that TransUnion distinguished discrimination cases. I'm using the Supreme Court report, 141 Supreme Court at the page break between 2204 and 2205, and if we look at the last sentence first, where it discusses the two sorts of statutes, it says that even though Congress may elevate harms that exist in the real world before Congress recognizes them to actionable status, that's on the one hand. It may not simply enact an injury into existence that was not related in any way to an actual harm. There's a difference between such as discrimination, which was not actionable until the statute made it actionable, but it was a harm in the real world versus something that was not a harm in the real world, such as an incorrect zip code on a credit report. If we go back a couple of sentences, it quotes Spokio and it says, Congress may elevate to the status of legally cognizable injuries, concrete de facto injuries that were previously inadequate at law. It cites Spokio, it cites Lujan, and then it cites Allen versus Wright, and in parentheses, discriminatory treatment. In other words, discriminatory treatment is a separate body of law. To add a little bit more clarification to that, Spokio gave one example as the exception to the Aikens and public citizen and Aikens cited Havens Realty. TransUnion then, when it said that that doesn't apply to TransUnion because that was not about being deprived of the right to information, but then went on to talk about the need for downstream consequences. The question is whether or not it eroded Spokio on that one point. On that point, it cited the Seventh Circuit's opinion in Casillas and the Eleventh Circuit's opinion in Tritchell. Both of those cases made that point, but they additionally analyzed whether or not they could impose a downstream consequences requirement for being deprived of the right to information, or did Havens Realty prevent them from doing that? Because Havens Realty holds the opposite. There aren't any downstream consequences in Havens Realty. They said that no, Havens Realty does not apply because Havens Realty is a discrimination case. Tritchell and Casillas involved the Fair Debt Collection Practices Act. If I could jump in a little bit, really on your argument, the informational harm or informational injuries, for all effects, a per se finding, and really anybody in the world, whether they're disabled or not, if they access this website, they have a lawsuit that they could file. You can be anywhere. You don't have to have any belief or intention to travel to Craig, Colorado, or the state. You don't even have to have an intention to book a room on the website. There's really an unbounded class of plaintiffs here. I'm just looking for the limiting principle in your argument. I don't think there is one. There's several limiting principles. First, for example, pretend I, in my state, review it. I'm not disabled, and my neighbor who is disabled reviews it. I am not discriminated against. I'm not denied full and equal treatment of goods or services or privileges or advantages on the basis of a disability. I'm not within the protected group. The 11th Circuit decision in Siesta, which came out just before TransUnion, cited that and said, even if the plaintiff is a tester, that they suffered stigmatic injury, as long as they are within the protected group and they personally encountered the discriminatory website. What if you're calling on behalf of your disabled neighbor? If I'm filing on behalf of my disabled neighbor? Yeah, you're accessing the website for your disabled neighbor. Can you become a plaintiff? I don't know. That's not a case that I would file. I think one could read into 12888. If I'm not their custodian or their ward, if the neighbor is not my child who is disabled, I personally don't encounter discrimination if I'm looking at it. It harms an informational harm. Why do you need to concede your point? The operative language is in section 12888 and in section 12182A on the basis of disability. In other words, I'm not deprived of any full and equal enjoyment of any service or privilege or advantage of a place of public accommodation on the basis of any disability. A disabled person is. Counsel, how is your neighbor injured by looking at the website? For that matter, Ms. Loffer, if they're not planning to stay at the hotel? The question goes back to, is Haven's Realty overturned? I'm just asking, what's the injury? I'm not asking for a case or anything. What is the injury you're alleging here? The injury is that their hotels market nationally. They reach out to the hotel. The nature of the injury is that they're deprived of a service, a privilege or advantage. But they aren't if they're not going to go to the hotel. Where's the deprivation? How would that be distinguishable from the Jeffries plaintiff in the Tandy case who solely tested the system? Again, I'm looking for you to articulate the injury suffered here. What is it? The injury suffered is that they are unable to go to the hotel. Congress also in 12101 said... No, no, no. Factually, what is the injury in fact? Not an injury in law. What is the injury in fact? They encounter a discriminatory online reservation system that fails to provide them information as to whether or not the hotel is accessible to them. But what is the injury if they're not going to go there? I mean, what if your neighbor just happens to pick up the newspaper and the Elk Run Inn has an ad there that says the exact same thing. They see it. They put it down. Do they have a federal lawsuit? It would depend on whether or not they meet the criteria of the statute and additional information is required. Now, counsel, do they have an injury that would give them standing to bring a lawsuit? If, for example, a person who lives in Hawaii finds out that there is a school in Maine, this is the example that some courts give, that segregates against people of his class, then the courts have said, well, he doesn't have an injury. But in that case, where is the injury within the meaning of the statute encountered? And if it's a physical segregation, he doesn't encounter segregation or discrimination until he goes to that place. In the situation of an online reservation service, a disabled person suffers the injury when they are in their own home. And the question becomes whether or not a court must apply Spokio or whether it must apply Havens Realty. In Havens Realty, the Coleman plaintiff had no intention of renting an apartment. He was strictly testing a discriminatory practice for the purpose of eradicating it. This court in Tandy applied that. Can I just stop you on Havens Realty for a second? My understanding is that the tester plaintiff that was deemed to have standing in Havens Realty had gone to the defendant four times and was given incorrect, untruthful, misrepresented information because of race four times. Isn't that different from this case? Havens Realty was about reading the statute by its literal terms, the operative language being any person. This court in Tandy applied that to the ADA on the basis that the language I'm asking you cancel about Havens Realty and the statute has the specific language because of race, that the misrepresentation was made because of the testers race. Now, was elk was the Elk Run webpage, can you allege much less prove that what was on the webpage was included there because of disability? The website and the online reservation service failed to provide the information that was of 12182B2A2. That is also within 12182A, the deprivation of full and equal enjoyment of a service, privilege, or advantage of a place of public accommodation. Havens Realty, many courts have held that Havens Realty is not applicable to the ADA because it was about racial animus and intentional discrimination as the court has just questioned. That is contrary to this court's opinion in Tandy, the 11th Circuit's opinion in Houston versus Merritt, and again, this court's opinion in Abercrombie, which was followed by a total of six circuits, which held that Havens Realty applies to the ADA. Havens Realty was about the information, the way it applied to the ADA was not about information because most of those cases were about why did the plaintiff intend to encounter a discriminatory TDD device, which is informational. The operative issue that applies Havens Realty to the ADA is not racial animus, it is that one reads the plain and unambiguous language of the statute and applies it. Havens Realty was about the Fair Housing Act, which obviously had different language. The ADA has its language that applies to disability and courts apply the clear and plain language of the ADA and look to whether or not there is injury. Spokio... Article 3 requires a case of controversy and trying to prevent the federal courts from being a forum for hypothetical suits. This line of cases, looks like Ms. Laufer has dozens of additional cases. We are trying to tease out whether this is a real case or a hypothetical case. None of us has any problem with testers, people that have a legitimate grievance under the statute. Going back to what Judge Matheson said, is it really too much to ask and really what Lujan and its progeny are all about is, is it too much to ask a plaintiff to have a contemporaneous concrete particular desire to consume this product or services? If the answer to that is yes, and you put that in your complaint, then we are off to the merits. We don't have that here. You want us to adopt a rule based on Tandy that basically endorses a hypothetical lawsuit. That may be okay under TransUnion and Spokio, but that really is the implication of it. It waters down the case of controversy requirements to very little in this class of cases. If I could just make one final point. It is not on the record, but in July, Laufer made good and she went to every place she said she was going to go, including Colorado. She has a niece in Colorado. The reason why she picked Colorado is because she had been there almost every year for quite a number of years. She went back in July. We could have alleged that, except that if one then makes it about the likelihood that they would go to the hotel, district court opinions are all over the map. It is almost impossible to enforce the ADA if that becomes the criteria. It comes to whether or not the ADA is enforceable to testers. If online reservation services are held to be subject to Spokio and not Havens Realty, it would hold that Spokio has overturned testers standing in the ADA. There is no reason why that would not spill over into other civil rights laws such as Havens Realty and any other discrimination law. I am so sorry. I am not a cat. Yeah, we are not going to record this for social media. I would hate to see myself on Fox News for this. All right, let's hear from Mr. Rotter. You may proceed. Good morning, your honors. May it please the court. I am Steven Rotter and I represent defendants Randy and Cindy Looper. Thank you for having me. We have gone over some of this already. This case really is about whether to establish standing merely by suing over a statutory right without alleging an injury in fact. She did not. She suffered no actionable injury. As we have discussed this morning, TransUnion's findings do reiterate the bright line rule requiring a concrete, actual, and particularized injury which is in fact supported, not controverted, by Spokio, Lujan, and this court's decision in Colorado Cross Disability Coalition. Earlier, opposing counsel did refer to a line in TransUnion in response to a question by the court and part of the paragraph goes on to say, as the Supreme Court emphasized in Spokio, Article III standing requires a concrete injury even in the context of a statutory violation. As a trial court found, and so numerous courts around the country, this plaintiff's only interest was to enforce the DOJ guidelines for ADA regulations. She had no personal stake in the matter, did not try to book, and was not going to book. Is this just a guideline or is it a regulation? Is that a force of law? I'm sorry, you cut out, but I think you asked it. So there's the ADA regulation and then the Code of Federal Regulations that the DOJ issued to... You referred to it, my question was, you referred to it as a guideline. Guidelines are an enforceable law. I thought there was an enforceable law under the regulation. You're right, Your Honor. I misspoke there. I said DOJ's guidance, not a guideline. I meant their guidance through the regulation. Okay. And so I should have stated that better. Oh, counsel, we talked with Mr. Bacon about Havens Realty quite a bit and you haven't really addressed that in your briefing. So I think maybe we better do it now. If the testers in Havens Realty had standing, why not Ms. Loffer here? There's two reasons, Your Honor. First of all, the plaintiff in Havens was a tester who had a statute, a created interest in accurate information by statute in providing that accurate information to any person. The statute can be distinguished because that was for any person. Here, it's only for disabled persons and that's the limiting factor. Secondly, that plaintiff, as Your Honor pointed out, one of you pointed out, did experience a specific concrete harm over and over again that was linked directly to that interest in receiving accurate information. So unlike the cases that involve statutes that provide a right of action for any person to receive accurate or complete information, like in Havens, ADA cases are different. This is because the ADA regulations, yes, Your Honor? Go ahead. It's because those regulations that require accessibility information, they only apply when that information is necessary for a disabled person, such as plaintiff, to actually avail themselves of the goods and services and facilities from the defendant. In other words, the framework for these ADA cases are not based on a global right to be free from disability discrimination. It's a limiting right. It's to be free of disability discrimination only when the plaintiff is actually, and in fact, denied the full and equal enjoyment of goods and services. So plaintiffs have to show they're going to avail themselves of those goods and services. Let me break this down. Judge Matheson hadn't asked his question. I was going to ask the same one. You've made several distinctions here. You've said that here we're dealing with regulation rather than a statute. Let's hold off on that for a minute. What you just seem to be saying is that the statute doesn't require this information to be disclosed to a disabled person unless the disabled person needs this information for some purpose. And that sounds more like they don't have, that the plaintiff doesn't have a cause of action than that the plaintiff doesn't have standing. Let's focus just on the fact that the plaintiff here was not given the information to which she was entitled under the law. How do you distinguish that from Haven? She said that the black tester was injured because what the only entry to the black tester mentioned in the Haven's opinion is not getting accurate information that she was entitled to under the law, under the statute. There's nothing, I thought the record in Haven's indicated that the black tester had no interest in renting. What was distinguishable about Haven's? Maybe I should back up. If you just read TransUnion, then there's no standing here. But it's significant that TransUnion did not overturn Haven's. So that makes you wonder what they're saying in TransUnion. And if you just look at Haven's, I don't, tell me what's the difference between the injury in Haven's to the black tester and the injury here, other than that it was repeated several times. Right, so I think that is an important distinction that it was repeated several times. Really? Yes. So if you have three non-injuries, that becomes an injury? Like a strikeout in baseball? No, I think that here part of the problem was district court found that there was no actual belief that an imminent injury was going to occur, that there was this downstream consequence. Right, that's what TransAmerica says. Yeah, TransUnion addresses that. And they say there needs to be some imminent harm or some downstream consequence. Let me stop you there, because I agree with you. That language, downstream consequence, makes it appear that there's an outstanding here. The problem is we still have the Haven's decision, and TransUnion didn't explicitly overturn Haven's. That makes me wonder what's going on at the Supreme Court. So just focus on Haven's. Can Haven's be distinguished? Right, and Your Honor, my understanding from Haven's is that the court did find that there was this downstream consequence, that it was believable, and that it was credible, and that it was a concrete injury when the tester returned to try and get the information that they were entitled to. I think that that's the distinction here. Also, it's not an ADA case, and as I said, and I know you wanted to go back to this, I do think the statute, the regulation here, not only requires you to be disabled in order to avail yourself of this regulation and have a right to sue, but it also requires that missing piece here, that the plaintiff has to actually suffer the concrete injury because it's either imminent harm, this downstream consequence, or an articulation or allegation of how they wanted to actually book a room, how she wanted to book a room and go there. I do have another point. I've got a related question. In addition to trying to determine where Haven's Realty fits these days in light of recent Supreme Court cases, I'm also interested in the information injury argument that Ms. Lauffer has been making. If she had a legal right under the ADA and the regulation to information about accessibility and she didn't get it, why isn't that enough for standing under the information injury cases like Aikens and Public Citizen, both of which Ms. Lauffer relies upon? It seems to me that we're trying to figure out where the older precedent fits now, and Haven's Realty is central to the discussion from this morning's arguments, but also we have these other cases about information injury. What do we do with those? Well, I think you're right in raising that point because I think we're in a day and age where we have these outdated statutes and regulations that need to be promulgated in a way that we're those that are disabled. I get that. But here, when you're asking about the informational injury, it again goes back to the fact that it's like a tree falling in a forest, right? I mean, she was never going to use the information. It doesn't matter that the information wasn't correct for her. Why did it matter in these other cases? Because they demonstrated a concrete injury. How was there a concrete injury in a federal election commission versus Aikens? My understanding in that case is that the court found that that lack of information specifically prevented people at that time from an imminent harm that they were going to experience, right? That the court said, listen, this is imminent and this is real, and they connected the dots. But what was the harm other than not getting the information? Not having the knowledge to leverage that information for their voting rights. It is a nuanced issue. I understand that. And I did want to address the fact that Mr. Bacon talked about his client traveling to Colorado, and certainly if she is standing now, that is a different case, and that's something different. And if we look at standing as a whole too, and this is something we didn't address, is redressability, right? This is a third prong. I'll have you know that defendant's place of lodging was built actually before the ADA and its amendments were promulgated. Their motel, therefore, did not even need to have disability accessibility, and they don't have to have accessibility. The fact of the matter is, what information is that? The absence of information. No, no, no, no, no. You get information, you know I'm disabled. I don't want to stay there because they don't have facilities for me. So maybe she did get the information, right? Then she did get the information she needed to know whether or not she could stay there because there was a lack of information on the website. And I've heard opposing counsel in these cases argue that motel websites should then list everything they're lacking. Well, you know, the ADA guidelines and regulations are like three inches thick. I mean, not only would that be bad website advertising for all these motels, but it's not what the law intended. We do have this. Isn't that a merits issue rather than a standing issue? It goes to redressability, I think, but I agree. I just wanted to cover that a little bit so that court better understands the factual background here. But you're absolutely right. I mean, there was no concrete injury here to plaintiff. I think you guys hit the nail on the head when you spoke with Mr. Bacon earlier, so I'm, you know, I rest my side of the argument. Just restate how you evade the clutches of Tandy. Help us out there. Yes, Your Honor. I'm grabbing my notes for Tandy. So it's the same way the trial court distinguished it. This circuit held that there was an injury, in fact, in Tandy because the learning device, I'm sorry, the hearing impaired plaintiff was not able to use an inoperable TDD system, which is used to provide hearing impaired patrons necessary information to access the bus system. That's different because as the trial court said, there is no, the plaintiff here, there's no nexus between her personal actions to actually come here and the informational injuries she's alleging. Again, she had no intention and it goes beyond intention. She did not book a room or take any action to provide a nexus between the informational injury and her inability to communicate. And the trial court expands on that argument in, and I'm sorry, I don't have the page's number in front of me, but that's, her decision can be referred to for more detail. All right, counsel, there's nothing else. Appreciate your arguments. Very interesting case. I thought those were helpful and you are excused and the case is submitted.